| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| In re:<br><br>EASTMAN KODAK COMPANY, *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 12-10202 (ALG)<br><br>(Jointly Administered) |

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

SULLIVAN & CROMWELL LLP
*Counsel to the Debtors and Debtors in Possession*
125 Broad Street
New York, New York 10004
  By:  Andrew G. Dietderich
        Brian D. Glueckstein
        Michael H. Torkin


MILBANK TWEED HADLEY & McCLOY LLP
*Counsel to Official Committee of Unsecured Creditors*
One Chase Manhattan Plaza
New York, New York 10005
  By:  Dennis F. Dunne
        Tyson M. Lomazow
        Brian Kinney


AKIN GUMP STRAUSS HAUER & FELD LLP
*Counsel to the Unofficial Second Lien Noteholders Committee*
One Bryant Park
New York, New York 10036
  By:  Michael S. Stamer
        David H. Botter
        Abid Qureshi

1

BROWN RUDNICK LLP
*Counsel to Greywolf Capital Partners II; Greywolf*
*Capital Overseas Master Fund; Richard Katz,*
*Kenneth S. Grossman; and Paul Martin*
7 Times Square
New York, New York 10036
  By:   Robert J. Stark
           Andrew Dash
           Neal A. D'Amato


KEEFE BARTELS, LLC
*Counsel to Frank E. Williams, Jr.; Andrew Gregor*
*for Putnam Capital Services; George Karfunkel;*
*William Stern; Lance Laifer for Wapiti Partners, L.P.;*
*Eric Wagoner for Source Capital Group; Roman*
*Stockhammer; Luis Diaz; and Chris DePierro*
170 Monmouth Street
Red Bank, New Jersey 07701
  By:   Stephen G. Grygiel


TRACY HOPE DAVIS
UNITED STATES TRUSTEE
33 Whitehall Street
New York, New York 10004
  By:   Brian S. Masumoto


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Certain holders of common stock issued by debtor Eastman Kodak Company (together with its debtor-affiliates, "Kodak") have submitted a motion, pursuant to § 1102(a)(2) of the Bankruptcy Code, requesting the appointment of an official committee of equity security holders in Kodak's chapter 11 cases. Because the Court finds on the present record that the appointment is not "necessary" to assure Kodak's shareholders adequate representation in these chapter 11 cases and the costs appear unreasonable in light of the possible benefits, the motion is denied.

2

**Background**

On January 19, 2012 (the "Petition Date"), Kodak filed for chapter 11 relief.  The common stock of Kodak is publicly held, with approximately 270 million shares outstanding.  *See* Exhibit A to Petition, Dkt. No. 1.  After the Petition Date, counsel for certain Kodak shareholders (the "Shareholders") sent letters to the U.S. Trustee requesting the formation of an official committee of equity security holders.  After consideration of extensive information supplied by the Shareholders in support of the motion and by Kodak and certain other parties in opposition, the U.S. Trustee denied the Shareholders' request on February 29, 2012.  The Shareholders then filed the motion at issue, asking the Court to order the appointment of an official equity committee under § 1102(a)(2) of the Bankruptcy Code.  At oral argument on the motion, the Shareholders argued that the possibility of a return to equity justified the appointment of an official equity committee, and asserted that without a committee they would be denied a meaningful opportunity to participate in Kodak's restructuring.

The Shareholders' motion is opposed by Kodak, the U.S. Trustee, the official unsecured creditors' committee, and an unofficial, *ad hoc* second lien noteholders' committee.  The objecting parties assert that the Shareholders' assertions of solvency are premature and that Kodak should not be required to bear the cost of an additional committee when the interests of Kodak's shareholders are adequately represented by other constituencies that share a common desire to maximize the value of Kodak's estate.  The matter has been fully briefed and is now ready for decision.

**Discussion**

The U.S. Trustee may appoint an official committee of equity security holders pursuant to § 1102(a)(1) of the Code.  If the U.S. Trustee does not deem the appointment of such a

committee "appropriate," the Court, on request of any party in interest, may order the appointment "if necessary to assure adequate representation of . . . equity security holders." 11 U.S.C. § 1102(a)(2).

The term "adequate representation" is not defined by the Code; it is generally determined on a case-by-case basis. *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009); *In re Beker Indus.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985). Courts have looked to a number of factors to inform the determination, including the number of shareholders; the complexity of the case; the likely cost of an additional committee to the estate; whether equity is adequately represented by stakeholders already at the table; the timing of the motion relative to the status of the chapter 11 case; and whether there appears to be a substantial likelihood that equity will receive a meaningful distribution in the case. *See, e.g.*, *In re Williams Commc'ns Grp., Inc.*, 281 B.R. 216, 220-21 (Bankr. S.D.N.Y. 2002); *In re Leap Wireless Int'l, Inc.*, 295 B.R. 135, 137 (Bankr. S.D. Cal. 2003).

Although no single factor is dispositive, the statute requires a court to find that appointment of an official committee is "necessary" for equity holders' interests to be adequately represented, a high standard that is far more onerous than if the statute merely provided that a committee be useful or appropriate. *In re Oneida Ltd.*, No.06-10489, 2006 WL 1288576, at *2 (Bankr. S.D.N.Y. May 4, 2006). One court has suggested that the ordinary meaning of "necessary," under the related standard of § 1102(a)(4),[1] requires that the requested relief be "'absolutely required,' 'essential,' or 'indispensable'" for adequate representation. *In re ShoreBank Corp.*, 467 B.R. 156, 164-65 (Bankr. N.D. Ill. 2011) (quoting *Webster's Third New Int'l Dictionary* 1511 (1981)). Other courts have adopted a somewhat less stringent standard for

---

[1] Section 1102(a)(4) provides in relevant part "the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is *necessary to ensure adequate representation* of creditors or equity security holders." 11 U.S.C. § 1102(a)(4) (emphasis supplied).

4

the appointment of an equity committee under § 1102(a)(2), but there appears to be uniform recognition that such an appointment constitutes extraordinary relief and is the exception rather than the rule in chapter 11 cases. *Williams*, 281 B.R. at 223; *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); 7 *Collier on Bankruptcy* ¶ 1102.03[2] (16th ed. rev. 2011).

In the instant case, the Shareholders have not shown that an official committee is "necessary" for their interests to be "adequately represented." All the other constituencies in the case have the same goals as a shareholders' committee – to maximize the value of the estate. There seems to be general consensus that this will be driven in large part by the success of Kodak's plan to sell its patent portfolio, a process that is underway.[2] The Shareholders imply that the existing constituencies have no incentive to maximize value to the extent of obtaining value for the equity, but there is no basis for any such assumption. The Debtors are debtors-in-possession, and management reports to the Board of Directors. It is recognized that the debtor in possession in a chapter 11 case has fiduciary duties to the creditors; however, as the Supreme Court has stated, "[T]he insolvency of a company does not absolve the board of its fiduciary duty to the shareholders." *Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). Although the interests of a company's board may ultimately diverge from shareholders for plan purposes, "the usual presumption [is] that the Board will pay due (perhaps special) regard to the interests of shareholders" in bankruptcy. *Oneida*, 2006 WL 1288576, at *2. There is no reason to think that the interests of shareholders will be ignored in these cases, particularly where Kodak's directors and officers own over 10 million shares of Kodak stock themselves. *See* Declaration of Antoinette P. McCorvey dated January 18, 2012, Dkt. No. 21, at Sch. 4-2. Thus, the existence of a functioning board of directors supports the inference that equity's

---

[2] *See* Debtors' Motion for Orders Conditionally Authorizing the Sale of Patent Assets Free and Clear of Claims and Interests, filed 6/11/2012, Dkt. No. 1361.

interests will be adequately represented notwithstanding the absence of an official equity committee. *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 699 (Bankr. C.D. Cal. 2008).

In addition, Kodak's unsecured creditors' committee has a duty to maximize the value of the Kodak estates which would inhere to the benefit of shareholders. The Shareholders wholly fail to support the position taken in their papers that the creditors' committee will cease to attempt to maximize value once the point is reached at which creditors will be paid in full – as if it were possible to divine that point at this stage in these cases. For present purposes, creditor and shareholder interests are generally aligned. *See Williams*, 281 B.R. at 222-23 (denying motion to appoint equity committee in part because "the Creditors' Committee has sufficiently aligned or parallel interests with the Shareholders to preclude the need for an additional committee."); *Leap Wireless*, 295 B.R. at 139-140 (refusing to appoint equity committee where "[t]he economic interests of the bondholders and shareholders appear to be the same—that is, to find the highest realistic value for the company.").

Finally, given the quality of the legal talent hired by the Shareholders, there is no reason to conclude that the Shareholders cannot be represented ably through an unofficial, or *ad hoc*, committee. As the Court said in *Spansion* in denying a motion to appoint an equity committee, "the Ad Hoc Equity Committee is well organized, well represented by counsel, and adequate to the task of representing its interests without 'official' status." 421 B.R. at 163. If the Shareholders make a substantial contribution to Kodak's reorganization, they can obtain compensation for their fees under Bankruptcy Code § 503(b)(3)(D). On the other hand, the estate will not be forced to fund a constituency that appears to be out of the money.

That brings us to the question of solvency. The Shareholders have compiled some data on the issue and ask the Court to undertake a valuation trial at the outset of this case, asserting

that Kodak could be solvent assuming it terminates certain retiree benefits. Any potential benefit to conducting such a trial, however, is outweighed by the considerable time and expense it would impose on Kodak at this stage of its reorganization. Nothing could be more harmful to Kodak's restructuring efforts than a hearing at which it would be required to adduce evidence of its insolvency at a time when its efforts should be focused on maximizing the value of its enterprise for all stakeholders. One of the goals of chapter 11 was the avoidance of the time and expense of a valuation battle, which was a feature of practice under old chapter X. Donald S. Bernstein, *Towards a New Corporate Reorganization Paradigm*, J. Applied. Corp. Finance, Vol. 19, Issue 4, p. 10 (Fall 2007). Thus, the cases generally do not require exhaustive evidence on solvency before a decision on a motion to appoint an equity committee. *See, e.g., Williams*, 281 B.R. at 221; *Oneida*, 2006 WL 1288576, at *2; *In re Northwestern Corp.*, No. 03-12872, 2004 WL 1077913, at *3 (Bankr. D. Del. May 13, 2004).

In any event, based on the instant record, there is no substantial evidence that equity will be entitled to a meaningful distribution in this case. For example, Kodak's most recent Form 10-K Annual Report for the year ending December 31, 2011 reflects a consolidated balance sheet (in accordance with GAAP) with $7.028 billion of liabilities compared to only $4.678 billion of assets. *See* 2011 Form 10-K, at 55, Exhibit A to Debtor's Opposition to Motion, Dkt. No. 808. As of the Petition Date, Kodak identified over $4.6 billion in prepetition liabilities, a sum which has since been augmented by its DIP financing facility and post-petition administrative costs. Kodak's first four monthly operating reports show net losses of approximately $100 million per month. *See* Dkt. Nos. 744, 745, 1019, 1282. Although the value of Kodak's assets, particularly its patent portfolio, has yet to be determined, the Shareholders' assertions regarding solvency rest on a disregard of obligations to retirees and others and speculation.

7

Finally, the Shareholders also argue that equity should have a committee since an official committee has been appointed for Kodak's retirees. This argument is without basis. Congress provided that in certain cases (generally cases where there is no union representing retirees), the court "shall order" the appointment of a representative committee of retired employees "if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate." 11 U.S.C. § 1114(d). Since Kodak has publicly announced its decision to modify retiree benefits, it could not reasonably object to the retirees' motion for a committee. The issues are entirely different with respect to the appointment of an equity committee, and the Court's appointment of a retiree committee in no way relieves the Shareholders of their burden of establishing that an official equity committee is "necessary" within the meaning of § 1102(a)(2).

In conclusion, on review of the relevant factors, the Court concludes that the Shareholders have failed to satisfy that burden. Although Kodak's chapter 11 cases are large and complex, the costs that would result from appointment of an equity committee are substantial and cannot be justified at this stage where equity's interests are represented by other constituencies seeking to maximize the value of the estate and by a sophisticated *ad hoc* group of shareholders. Although the Court does not reach the question of solvency in this opinion, the Court notes that there is no evidence currently in the record that equity is likely to receive a meaningful distribution. If future developments change any of these conclusions, the Shareholders may renew their motion for an official committee at that time, but at this point their motion must be denied.

## Conclusion

For the foregoing reasons, the Shareholders' motion to appoint an official committee of equity security holders is denied. Kodak's counsel shall settle an order on three days' notice.

Dated: June 28, 2012
       New York, New York

                                **s/Allan L. Gropper**
                                UNITED STATES BANKRUPTCY JUDGE