**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EASTMAN KODAK COMPANY, *et al.*, | ) | Case No. 12-10202 (ALG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

———————————————————————

## <u>MEMORANDUM OF DECISION AND ORDER</u>

A P P E A R A N C E S :


SULLIVAN & CROMWELL LLP
*Counsel to the Debtors and Debtors in Possession*
125 Broad Street
New York, New York 10004
  By:  Andrew G. Dietderich
       Michael H. Torkin
       Mark U. Schneiderman
       Alexa J. Kranzley


NIXON PEABODY LLP
*Counsel to the Debtors and Debtors in Possession*
1300 Clinton Square
Rochester, New York 14604
  By:  Roger W. Byrd


McGUIREWOODS LLP
*Counsel to Counterparty ITT Space Systems, LLC*
1345 Avenue of the Americas
New York, New York 10105
  By:  Shawn R. Fox
  -and-
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
  By:  David I. Swan
       J. Robertson Clarke

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Debtor Eastman Kodak Company ("Kodak") has moved to assign a ground lease that it previously assumed on August 15, 2012 (the "Motion"). The lease has a prohibition against assignment without the consent of the lessor, and the lessor, ITT Space Systems, LLC ("ITT"), opposes the assignment on the sole ground that Kodak cannot rely on its rights as a debtor to override the anti-assignment provision because it did not seek permission to assign the lease at the time it assumed the lease (within the 210-day time period of Bankruptcy Code § 365(d)(4)). ITT has not questioned the ability of proposed assignee, RED-Rochester, LLC (the "Assignee"), to perform under the ground lease. This is apparently a case of first impression. For the following reasons, the objection is overruled, and the Motion is granted.

## Background

The following facts are taken from the parties' pleadings and are not disputed.

In 2004, ITT purchased certain land, buildings, and parking lots in a Rochester, New York business park from Kodak, and Kodak entered into a ground lease with ITT (the "Ground Lease") for approximately 2,200 square feet of the transferred land to continue operating a fire water pump. The Ground Lease prohibited any assignment or sublease "without the prior written consent of [ITT], which consent may be granted or withheld by [ITT] in [ITT's] sole discretion." Ground Lease, Docket No. 4257-1, at § 10(a). The Ground Lease provided that it would expire 50 years from September 30, 2005, *id.* at § 1(a), and that Kodak would pay $100 per month as rent, to be adjusted every five years in accordance with the increase in a consumer price index. *Id.* at § 3(a)-(b).

On January 19, 2012 (the "Petition Date"), Kodak filed for relief under chapter 11.  As further discussed below, the Bankruptcy Code gives a chapter 11 debtor 120 days to assume or reject an unexpired lease of real property and the right to seek one non-consensual 90-day extension of that period.  11 U.S.C. § 365(d)(4).  Kodak sought such an extension, on notice to ITT, and on May 10, 2012, the Court entered an order that among other things extended Kodak's time to assume or reject the Ground Lease through August 16, 2012, the maximum period.  Docket No. 1154.  On July 17, 2012, Kodak filed a motion to assume various unexpired nonresidential real property leases, including the Ground Lease (the "Lease Assumption Motion").  Docket No. 1769.  That motion represented that "[t]he Assumed Leases are critical to the Debtors' ongoing business operations and will be an integral part of any plan of reorganization that the Debtors will ultimately propose in these cases."  *Id.* at ¶ 8.  The proposed order attached to the Lease Assumption Motion nevertheless contained the following reservation of rights:

> Nothing included in or omitted from the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates, subject to appropriate notice and a hearing and this Court's approval unless otherwise agreed to by the parties, to assign any of the Assumed Leases pursuant to, and in accordance with, the requirements of section 365 of the Bankruptcy Code.

Docket No. 1769-2, at ¶ 7.  ITT did not object or otherwise respond to the Lease Assumption Motion or the proposed form of order.  On August 15, 2012, the Court entered an order granting the Lease Assumption Motion (the "Assumption Order"), which contained the foregoing reservation of rights.  Docket No. 1870, at ¶ 7.

At some point after assuming the Ground Lease, Kodak apparently decided to sell the utility operation and to focus on its other businesses.  *See* Docket No. 2670.  On December 21, 2012, Kodak entered into an Asset Purchase Agreement with RED-Rochester, LLC (the

"Assignee"), under which the Assignee would purchase the utility operations, among other things. Kodak sought this Court's approval for the sale, *see* Docket No. 2670, which was granted by an order entered on January 18, 2013. Docket No. 2893. Consummation of the sale transaction was subject to the receipt of certain governmental approvals and authorizations, and on June 21, 2013, Kodak filed a motion to approve a settlement (the "Settlement") between itself and certain New York State governmental entities regarding environmental liabilities (the "Settlement Motion"). *See* Docket No. 4100.

On June 28, 2013, Kodak filed the present Motion, seeking among other things, (i) to assign the Ground Lease to RED-Rochester and (ii) to approve an amendment to the Asset Purchase Agreement and sale order to facilitate the Settlement with New York State. *See* Docket No. 4190. The Motion designated the Ground Lease as an Additional Assigned Contract, *see id.* at p. 13 n.3, presumably so that the Assignee could operate the fire water pump in conjunction with the utility operation. ITT objected to the assignment of the Ground Lease. *See* Docket No. 4257.

The Motion was scheduled to be heard on July 17, 2013 along with the Settlement Motion, but on July 16, 2013, the United States filed a response to the Settlement Motion raising concerns regarding environmental issues. *See* Docket No. 4311. At the July 17, 2013 hearing, Kodak took the Motion to assign off calendar to allow the parties to engage in further discussions, but on July 19, 2013, scheduled the Motion for hearing on July 30, 2013. At the July 30, 2013 hearing, Kodak stated that the Motion could be approved independently of the Settlement Motion, and the Court took the matter under submission after hearing the arguments of Kodak and ITT regarding the assignment of the Ground Lease. No party other than ITT objected to the assignment.

4

On August 16, 2013, the Court held an adjourned hearing on the Settlement Motion, which reflected an agreement that – among other things – $8.5 million in proceeds from the sale of the utility operations business would be posted as assurances for cleanup obligations, with those proceeds eventually going into a trust on the effective date of Kodak's Plan of Reorganization.  The Settlement was approved by an order entered on August 19, 2013.  *See* Docket No. 4885.

## Discussion

The issue presented by this dispute involves the interplay between three provisions of the Bankruptcy Code.  Section 365(f)(3) allows a debtor to assign executory contracts and unexpired leases notwithstanding a contractual anti-assignment clause, providing as follows:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.[1]

11 U.S.C. § 365(f)(3).  Section 365(d)(4) – as amended in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") – requires non-consensual assumption of an unexpired lease of nonresidential real property in a chapter 11 case no later than 210 days after the petition date, as follows:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--
>
> (i) the date that is 120 days after the date of the order for relief; or
>
> (ii) the date of the entry of an order confirming a plan.

---

[1] Kodak as a debtor-in-possession has the same rights as a trustee to assign contracts.  11 U.S.C. § 1107(a).  Use of the term "debtor" in this Opinion includes a debtor-in-possession in a chapter 11 case.

(B)    (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

(ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. § 365(d)(4). Section 365(f)(2) allows a debtor to assign certain contracts if the contract is assumed in accordance with § 365 and the assignee provides adequate assurance of future performance. It reads:

The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

The question is whether the assumption and assignment must occur at the same time. ITT argues that a nonconsensual assignment of an unexpired lease of nonresidential real property cannot occur after an assumption, and thus cannot occur outside of the 210-day period of § 365(d)(4). Kodak asserts that debtors can utilize the benefits of § 365(f)(3) to assign contracts during the bankruptcy proceedings but after the date of assumption. There are apparently no cases directly on point regarding whether an assumed lease can be assigned outside of the time period of subsection (d)(4).

In deciding the case, the Court must start, as always, with the plain meaning of the statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). According to ITT,

§ 365(f)(2) has language requiring that assumption and assignment occur simultaneously: "The trustee may assign an executory contract or unexpired lease of the debtor only if – (A) the trustee *assumes* such contract or lease in accordance with the provisions of this section. . . ."  11 U.S.C. § 365(f)(2) (emphasis added).    ITT argues that the use of the present tense of the verb "to assume" leads to the inference that the assignment must occur at the time of the assumption. However, there is no authority that use of the present tense in this instance requires simultaneous assumption and assignment.  The words of the statute, reasonably interpreted, do not require it. The cases that have construed § 365(f)(2)(A) hold only that assumption must occur before assignment.  *See*, *e.g.*, *In re Mirant Corp.*¸ 440 F.3d 238, 253 (5th Cir. 2006) ("According to § 365(f)(2)(A), assumption must precede assignment."), citing *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001) ("Before an executory contract may be assigned, the trustee first must assume the contract. . . .").  The plain reading of the statute is that an assignment cannot occur unless the debtor has satisfied the provisions of § 365 governing assumption.

Moreover, even if the Court were to credit ITT's argument that the use of the present tense is meaningful, other parts of § 365 make it clear that assumption and assignment are independent concepts.  Thus, § 365(k) – which provides that the bankruptcy estate is not liable for post-assignment breaches of contract – uses the past tense of "to assume:" "Assignment by the trustee to an entity of a contract or lease *assumed* under this section . . ." 11 U.S.C. § 365(k) (emphasis added).  Section 365(c) limits the right of a trustee to "assume *or* assign any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(c) (emphasis added).  Use of the conjunction "or" implies that assumption and assignment can take place at different times. Section 365(b)(3), which sets forth special rules for leases in a shopping center, also speaks in two subsections of "assumption *or* assignment."  11 U.S.C. §§ 365(b)(3)(C), 365(b)(3)(D)

(emphasis added).  A court must construe all parts of a statute together so as to give all parts meaning and treat similar terms in a similar manner.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).  Such construction leads to rejection of ITT's position.

Similarly, § 365(d)(4) does not contain a deadline for assigning, as opposed to assuming, a contract.  Insofar as the Court needs to examine the purpose of § 365(d)(4), it was adopted to limit the discretion of judges to extend time to assume or reject certain commercial contracts and to provide landlords with greater certainty as to such tenancies.  *See Tully Constr. Co., Inc. v. Cannonsburg Env. Assocs., Ltd. (In re Cannonsburg Env. Assocs., Ltd.)*, 72 F.3d 1260, 1266 (6th Cir. 1996); *In re Treasure Isles HC, Inc.*, 462 B.R. 645, 650 (6th Cir. B.A.P. 2011) ("Congress was concerned with balancing the interests of debtor lessees in having enough time to make 'informed' decisions about leases against the interests of lessors in not being left in doubt concerning their status vis-à-vis the estate.") (citation and quotation omitted); *In re Michael H. Clement Corp.*, 446 B.R. 394, 402 (N.D. Cal. 2011) ("The purpose of § 365(d)(4) . . . is to protect lessors from delay and uncertainty by forcing the trustee or debtor-in-possession to act quickly to assume unexpired leases."); *In re Southampton Yen Restaurant Group LLC*, No. 09-13874, 2009 WL 3925563, *3 (Bankr. S.D.N.Y. Nov. 16, 2009) (same); H.R. REP. NO. 109-31, 109th Cong., 1st Sess. 153 (2005) ("[The amendment to § 365(d)(4)] is designed to remove the bankruptcy judge's discretion to grant extensions of the time for the retail debtor to decide whether to assume or reject a lease after a maximum possible period of 210 days from the time of entry of the order of relief.").

Construction of the Code to permit the assignment of a previously assumed commercial lease outside the deadline for assumption reasonably balances the goal of providing protection to

landlords and the goal of maximizing the value of a debtor's estate.  On assumption, the landlord

obtains a cure of defaults and reinstatement of the lease; if there is a subsequent default or

rejection by the debtor, the landlord will have an administrative claim for some of its damages.

*See* 11 U.S.C. § 503(b)(7).  Construction of § 365(d)(4) to cut off assignment rights would shift

the balance in favor of landlords beyond what Congress provided and improperly undermine the

policy of § 365 that gives a debtor broad rights to benefit from beneficial contracts and thereby

maximize the value of the estate.  *In re Penn Traffic Co.,* 524 F.3d 373, 382-83 (2d Cir. 2008),

citing *Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 954-55 (2d

Cir. 1993); *see also In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990).

It is well-accepted that the right to override an anti-assignment provision is one of a debtor's

most valuable rights.  As explained by the Bankruptcy Court in *In re Ames Department Stores*:

> Using that power conferred under section 365 to assign leases even without lessor
> consent, debtor lessees can sell the lessee's interests in such leases to those willing
> to pay for them – converting, for their creditors, into the much more liquid asset
> of cash, the economic value in the leases.

*In re Ames Dept. Stores, Inc.*, 287 B.R. 112, 119 (Bankr. S.D.N.Y. 2002) (footnote omitted); *see

also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095,

1098 (2d Cir. 1993); *In re Midway Airlines, Inc.,* 6 F.3d 492, 494 (7th Cir. 1993) ("This rather

extensive power reflects the important consideration that the trustee should be able to abandon

contracts that impose burdensome liabilities upon the bankruptcy estate, but should also be

allowed to retain favorable contracts that benefit the estate.  Section 365 thus advances one of the

Code's central purposes, the maximization of the value of the bankruptcy estate for the benefit of

creditors.") (citations omitted); *In re U. L. Radio Corp.*, 19 B.R. 537, 540 (Bankr. S.D.N.Y.

1982); *Matter of Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr. D. Mo. 1982); *In re Vista VI, Inc.*,

35 B.R. 564, 567 (Bankr. D. Ohio 1983).

Additionally, post-assumption assignment allows a chapter 11 debtor to avoid accruing administrative claims under a contract whose assumption, necessary because of the deadline in § 365(d)(4), proves to be improvident either because of issues with the contract or because the reorganization fails. Under § 365(k), "Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." ITT notes that other Bankruptcy Code sections explicitly provide rules that apply if an assumed contract is later rejected. *See* 11 U.S.C. § 503(b)(7) (providing for a cap on a landlord's rejection damages where the contract has been previously assumed). According to ITT, the absence of a provision recognizing the possibility of post-assumption assignment gives rise to a negative implication that assignments cannot take place after assumption. However, Congress did speak when it failed to require that an assignment take place within the time limits set forth in § 365(d)(4). Congress gave landlords additional protection when it amended § 365(d)(4) in 2005, but it did not choose to create the same deadline for the assignment of a commercial lease as it did for the assumption of such a lease.

ITT also asserts that a rule allowing an assignment to take place in the later stages of a bankruptcy case is unfair to landlords. Even if it were unfair, "'the disruption of non-debtors' expectations of profitable business arrangements' is 'common in bankruptcy proceedings.'" *In re Great Atlantic & Pacific Tea Co., Inc.*, 472 B.R. 666, 672-73 (S.D.N.Y. 2012), quoting *Penn Traffic*, 524 F.3d at 382. In any event, ITT has alleged no cognizable harm from the assignment in this case beyond the fact that the Ground Lease will continue in effect with its present terms. In other words, ITT's alleged harm derives from perceived deficiencies in the terms of the Ground Lease rather than any uncertainty regarding the tenancy. It remains protected after the

assignment because there is no dispute that the assignee can provide adequate assurance of future performance.  11 U.S.C. § 365(f)(2)(B).  Moreover, in this case, ITT cannot claim surprise that the Ground Lease was later assigned, notwithstanding assumption, because the Lease Assumption Order reserved Kodak's right to do so.  While the Motion stated that Kodak then intended to use the Ground Lease in its operations, the proposed order attached to that Motion clearly preserved Kodak's ability to assign the Lease: "Nothing included in or omitted from the Motion or this Order . . . shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates . . . to assign any of the Assumed Leases pursuant to, and in accordance with, the requirements of section 365 of the Bankruptcy Code."  Docket No. 1769-2, at ¶ 7.  ITT did not object to the form of the proposed order even though the reservation of rights was readily apparent.

Finally, ITT argues that the Ground Lease was assumed *cum onere*, meaning that it was assumed subject to all of its burdens, with one of those burdens being the anti-assignment clause. *See*, *e.g.*, *Nat'l Labor Relations Board v. Bildisco and Bildisco (In re Bildisco and Bildisco)*, 465 U.S. 513, 531-32 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*. . . .") (citation omitted); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.").  According to ITT, if a debtor assumes a contract without assigning it, the debtor thereby loses whatever rights it had under the Bankruptcy Code to assign that contract.  ITT does not cite any authority that directly supports this proposition.[2]  In any event, while a debtor must

---

[2] ITT cites only general language in several cases regarding a debtor's obligations under contracts that are entered into post-petition or the nature of the claim held by a creditor for breach of such a contract.  Sur-Reply of ITT, Docket No. 4430, at p. 8, citing *Cannonsburg Env. Assocs.*, 72 F.3d at 1265; *Devan v. Simon DeBartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 156 (4th Cir. 1999); *In re Leslie Fay Companies, Inc.*, 168 B.R.

assume a contract subject to its burdens, it can assume it with its benefits. If the debtor is still in

a bankruptcy case, one of those benefits is a debtor's right under § 365(f)(3) of the Bankruptcy

Code to assign a contract notwithstanding an anti-assignment clause in the contract. This is not

its only retained right relating to an executory contract or lease that has previously been assumed.

For example, a trustee's right to assume or reject a non-residential real property lease revives

after conversion from chapter 11 to chapter 7. *See* 11 U.S.C. §§ 348(c) ("Sections 342 and

365(d) of this title apply in a case that has been converted under section 706, 1112, 1208, or

1307 of this title, as if the conversion order were the order for relief"); *In re Helm*, 335 B.R. 528,

538 (Bankr. S.D.N.Y. 2006) ("[P]ursuant to § 348(c)[,] a conversion operates to revive the

Debtor's right to assume or reject an executory contract. . . .") (footnote omitted); *In re Hudson

Transfer Group, Inc.*, 245 B.R. 456, 458 (Bankr. S.D.N.Y. 2000) (same). Nevertheless, the

power to assign and override an anti-assignment clause is an important right that carries out one

of the main purposes of § 365 of the Bankruptcy Code – to allow debtors to maximize value for

the benefit of their creditors.

## Conclusion

The assignment of the Ground Lease to Assignee RED-Rochester is approved.

**IT IS SO ORDERED.**

Dated: August 29, 2013
      New York, New York

                    */s/ Allan L. Gropper*
                    UNITED STATES BANKRUPTCY JUDGE

---

294, 300 (Bankr. S.D.N.Y. 1994); *Terry Oilfield Supply Co., Inc. v. Am. Sec. Bank, N.A.*, 195 B.R. 66, 72-73 (S.D. Tex. 1996).