UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  

FOR PUBLICATION

-----------------------------------------------------------------x  
In re                                                          :  
                                                               :    Chapter 11  
EASTMAN KODAK COMPANY,                                         :  
                                                               :    Case No. 12-10202 (MEW)  
                                    Debtor.                    :  
-----------------------------------------------------------------x  

### DECISION (I) GRANTING MOTION TO REOPEN THE CHAPTER 11 CASE OF EASTMAN KODAK COMPANY, (II) DENYING MOTION TO ENJOIN CERTAIN STATE COURT PROCEEDINGS AGAINST RIDGE CONSTRUCTION CORPORATION, AND (III) DIRECTING THAT THE CASE BE RE-CLOSED

A P P E A R A N C E S :

CLYDE & CO US LLP  
Chicago, IL, 60603 and New York, NY 10174  
*Attorneys for Certain Underwriters at Lloyd's, London*  
By: Clinton E. Cameron, Esq.  
    Meghan Dalton, Esq.  
    Christopher Carlsen, Esq.  

HODGSON RUSS LLP  
Buffalo, NY 14202 and New York, NY 10158  
*Attorneys to Certain Tort Claimants and their Law*  
 *Firm, Lipsitz & Ponterio, LLC*  
By: Garry Graber, Esq.  
    James Zawodzinski, Esq.  

DUGGAN PAWLOWSKI & COOKE LLP  
Buffalo, New York 14203  
*Attorneys to Wayne and Jill Meissner and their Law*  
 *Firm, Lipsitz & Ponterio, LLC*  
By: James J. Duggan, Esq.  

**MICHAEL E. WILES**  
**UNITED STATES BANKRUPTCY JUDGE**

Certain Underwriters at Lloyd's, London ("**Lloyd's**") have filed motions dated August 24, 2020 (ECF No. 6731 and 6732) seeking to reopen the chapter 11 case of Eastman Kodak Company ("**Kodak**") and to enjoin the continuation of New York State Court lawsuits against a

company named Ridge Construction Corporation ("**Ridge**").[1] Ridge was a subsidiary of Kodak until September 30, 1971, when Ridge was dissolved.[2] Lloyd's contends: (a) that the dissolution of Ridge actually was a *de facto* merger; (b) that Ridge thereby became a part of Kodak; and (c) that the prosecution of the state court lawsuits against Ridge therefore violates the discharge of Kodak and the injunctions set forth in the Order confirming Kodak's First Amended Joint Chapter 11 Plan of Reorganization (ECF No. 4966). Plaintiffs in the pending state court lawsuits (the "**Tort Claimants**") and their counsel have opposed the requested relief, and the Court heard oral argument at a hearing on November 4, 2020. Following the hearing the parties made supplemental submissions on issues the Court raised.

The Tort Claimants allege that they were exposed to asbestos originating from a Ridge construction site. The Tort Claimants' lawsuits against Ridge were the subject of a prior motion filed by Kodak in 2019 to enforce the discharge and injunction provisions of Kodak's confirmed plan of reorganization, though the relief that Kodak sought was far different from the relief now sought by Lloyd's. In 2019, Kodak argued that two other insurers (not including Lloyd's) had pointed to contracts that Kodak had entered into in 1998 and 2005 and had argued that Kodak

---

[1] The pending state court lawsuits are: *Wayne W. Meissner and Jill G. Meissner, his spouse v. Air & Liquid Systems Corporation, et al.*, Index No. E201800795 3/2018, filed on October 3, 2018; *Gary W. Rademacker, et al. v. Air & Liquid Systems Corporation, et al.*, Index No. E2019002181, filed on March 7, 2019; *Dennis D. Ryan v. Air & Liquid Systems Corporation, et al.*, Index No. E2019003306, filed on April 9, 2019; *Robert R. Wightman v. Air & Liquid Systems Corporation, et al.*, Index No. E201906040067, filed on June 3, 2019; and *Karen K. Reid, Executrix of the Estate of Donald W. Reid, Deceased and Individually as the surviving spouse of Donald W. Reid v. Air & Liquid Systems Corporations, et al.* Index No. E2019007306, filed on August 2, 2019.

[2] A new "Ridge Construction Corporation" was formed immediately upon the dissolution of Ridge. The incorporation papers state that the new company would "remain dormant until such time as appropriate activity for it is determined." *See* Decl. of Clinton E. Cameron (ECF No. 6733), Ex. D. There is no indication in the record before me that the new company was ever active.

was obligated under those contracts to defend the actions against Ridge and to indemnify the insurers against any liability. Kodak sought a ruling that Kodak had been discharged from any such obligations to the insurers. *See* ECF Nos. 6708, 6713. It appears that Kodak arranged counsel and bore the expenses of Ridge's defense in the state court lawsuits until this Court confirmed that Kodak's liability to its insurers had been discharged upon the confirmation of Kodak's plan of reorganization. *See* Order at ECF No. 6726. It also appears that one or more of the insurers then took up the defense on behalf of Ridge, though that is not entirely clear.

In connection with the prior motion neither Kodak nor Kodak's insurers argued that Ridge had merged into Kodak, or that Ridge had been absolved of liability by the Kodak bankruptcy filing or by the confirmation of the Kodak plan of reorganization. Kodak instead asserted that Ridge had been dissolved and that as a dissolved company Ridge was still capable of being sued, particularly to the extent that plaintiffs in such suits might seek recoveries from Ridge's insurers. *See* Reorganized Debtors' Reply, dated Sept. 3, 2019 at 3-4 (ECF No. 6721); *Hartley v. Esposito (In re Hartley)*, 479 B.R. 635, 640 (S.D.N.Y. 2012). It also appears that no "discharge" defense was asserted on behalf of Ridge in the state court.

At least one of the cases (the one filed by Wayne and Jill Meissner) has proceeded to judgment, and a judgment has been entered in favor of the Meissners in the amount of $6,492,007.29. *See* Decl. of Garry M. Graber, Ex. B (ECF No. 6745-2). The insurers who were involved in the prior Kodak motion apparently are no longer involved. However, Lloyd's issued "excess" liability policies for the period May 1, 1969 through May 1, 1972 under which Ridge was named as one of the insureds, and the Tort Claimants apparently are now seeking recovery of the *Meissner* judgment under those policies. Lloyd's disclaimed coverage when it first learned of the Meissner litigation (*see id.*, Ex. C (ECF No. 6745-3)), and it appears that Lloyd's

3

did not get involved in the state court litigations until after efforts began to collect the Meissner judgment from Lloyd's.

As noted above, Lloyd's has now asked me to reopen the Kodak bankruptcy case and to hold that Ridge's 1971 dissolution should instead be treated as a *de facto* merger of Ridge into Kodak. Lloyd's further argues that as the result of this *de facto* merger Ridge became part of Kodak and no longer could be sued separately, and that the liabilities of the "merged" company were discharged when Kodak's bankruptcy plan was confirmed.

I have serious doubts as to whether it is proper for Lloyd's (on behalf of Ridge) to seek relief in this Court at this late date. Ridge and its other insurers sought no such relief, and Lloyd's has done so only after the state court entered judgment, after trial, in the *Meissner* case. The delay in seeking relief raises questions of laches. *See, e.g., In re Pagan*, 59 B.R. 394, 397 (D.P.R. 1986) (motion to reopen a case barred by laches due to unreasonable delay in seeking relief). In addition, Ridge itself was not a named debtor in the Kodak bankruptcy proceedings, and no prior order has ever been entered that either provided Ridge with a discharge of its liabilities or that recharacterized Ridge's dissolution as something different from what it purported to be. In that context, the entry of judgment against Ridge in the *Meissner* case (after a failure by Ridge to assert a discharge defense or otherwise to assert that its dissolution was really a merger) likely should be *res judicata* on the issue of whether Ridge remained a separate company after 1971 and remained subject to the Meissners' litigation claims.

There is also the question (ironically) of whether the Lloyd's motion is itself barred by the discharge injunction. Lloyd's argues that Ridge's dissolution should now be recharacterized as a merger, with the result that Kodak should now be deemed to have been liable for Ridge's debts. The purpose of that request is to try to bring Ridge's liabilities under the protection of

4

Kodak's discharge. But Kodak never actually assumed Ridge's liabilities and no court ever held that Kodak was liable for Ridge's debts. The first step in the Lloyd's request – namely, the request for a determination that Kodak was liable for Ridge's debts on a *de facto* merger theory – is a litigation claim that never was pursued or ruled upon in the past. The assertion of litigation claims alleging liability of Kodak based on pre-petition events was barred, and enjoined, by the discharge of Kodak and by the injunctions that are set forth in the order that confirmed Kodak's plan of reorganization.

However, these particular obstacles have not been argued in opposition to the Lloyd's motions. In any event it is not necessary to rely upon them. I will grant the motion to reopen the case for the purpose of considering the relief that Lloyd's seeks, but at the same time I will deny Lloyd's request for such relief. For a number of separate reasons, I hold that Ridge's obligations were not discharged and that *de facto* merger theories cannot be invoked to achieve the result that Lloyd's seeks.

First, it is admitted that there was no actual merger between Ridge and Kodak, and that instead there was a dissolution of Ridge. The parties agree that a dissolved company may still be sued, subject of course to any discharge under state law dissolution proceedings or through the dissolved company's own bankruptcy case. As a practical matter, however, a dissolved company normally has no assets left with which to satisfy a judgment. *De facto* merger theories were developed by courts to protect creditors of dissolved companies from being deprived of their remedies in situations where a parent has assumed all of a dissolved company's assets and has also assumed the operating liabilities associated with the dissolved company's business, so that the transaction substantively (if not in form) is equivalent to a merger. *See, e.g., Marenyi v Packard Press Corp.*, 90-CV-4439, 1994 WL 16000129, at *10 (S.D.N.Y. June 9, 1994], report

5

and recommendation adopted, 90 CIV. 4439 (CSH), 1994 WL 533275 (S.D.N.Y. Sept. 30, 1994) ("the de facto merger doctrine is a judge-made rule that rests on general equitable principles, . . . developed to protect the interests of the seller's creditors and dissenting shareholders, and for the purpose of assessing taxes.") (internal citations and quotation marks omitted).  In such cases, acquiring companies have been held liable to the dissolved companies' creditors just as though an actual merger had occurred, on the theory that it is equitable "to ensure that a source remains to pay for the victim's injuries." *In re N. Y. City Asbestos Litig.*, 15 A.D.3d 254, 258 (N.Y. App. Div. 1st Dep't 2005) (internal citations and quotation marks omitted).

In this case, however, Lloyd's does not seek to recharacterize the dissolution of Ridge for the purpose of *protecting* Ridge's creditors and for the purpose of providing them with an additional remedy.  Instead, Lloyd's wishes to use equitable *de facto* merger theories to *cut off* the claims that Ridge's creditors have asserted against Ridge itself, and to do so even though there are assets (insurance policies) that are available to cover Ridge's liabilities.  Lloyd's has not identified any cases where *de facto* merger theories have been used in this way, and I cannot see how equity could permit such a result.

Equity may provide a creditor of a dissolved company with a claim against the parent company on a *de facto* merger theory, but that does not mean that the reverse should be true – *i.e.*, that the dissolved company itself (or someone standing in its shoes) should be permitted to recharacterize its own dissolution as a merger, so that the dissolved company can nullify its own statutory exposure to continued claims, and so that the creditor's potential right to seek relief from the parent company can be transformed into an exclusive remedy and not merely an additional remedy.  There are many circumstances in which courts have devised equitable remedies that look beyond the forms of corporate transactions in order to protect innocent

parties. However, the parties who structure transactions (in this case, Kodak and Ridge) usually must abide by the structures they choose and the consequences of those choices. For example, *alter ego* theories and "piercing the corporate veil" remedies have been devised to permit innocent third parties to disregard corporate forms in certain circumstances. *See Off. Comm. of Unsecured Creditors v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 365 (Bankr. S.D.N.Y. 2002), *appeal dismissed*, 287 B.R. 861 (S.D.N.Y. 2003) (citations omitted). However, courts consistently have held that the owners of corporations may not seek to disregard the chosen corporate forms for their own benefits. *See, e.g., Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 B.R. 563, 587 (Bankr. S.D.N.Y. 2016) (denying liquidating trust's effort to apply alter ego theories to disregard corporate form to expand litigation claims it sought to assert, noting that there was "no support for the idea that alter ego theories can be used in this selective and self-serving way"); *Comm'r of Internal Revenue v. Schaefer*, 240 F.2d 381, 383 (2d Cir. 1957) (noting that "an individual [who] seeks the benefits of the corporate form or method for the ownership and conduct of a business [] may not ignore the presence or existence of the corporation, in order to avoid the disadvantages") (internal quotation marks and citations omitted); *Harris v. Stony Clove Lake Acres Inc.*, 608 N.Y.S.2d 584, 586 (App. Div. 3d Dep't 1994) (denying shareholder's effort to apply alter ego status to gain advantage of defenses belonging to corporation, noting that even when a corporation is wholly owned by a single individual, it has a separate existence and "courts are loathe to disregard the corporate form for the benefit of those who have chosen that form to conduct business"); *Jenkins v. Moyse*, 172 N.E. 521, 522 (N.Y. 1930) (denying sole shareholder's effort to apply alter ego theories to gain benefit of avoiding interest rate that would be usurious if applied to an individual but not to a corporation).

7

We have found no decisions in which similar issues have been directly discussed in the context of *de facto* merger theories, but the few decisions we have found are supportive of this Court's conclusions. In *Atrinsic, Inc. v. Mother Nature, Inc.*, No. 652400/2010E, 2011 N.Y. Misc. LEXIS 7027 (Sup. Ct. N.Y. Cnty. Dec. 27, 2011), for example, parties argued that one company should be liable for the obligations of a dissolved company on a *de facto* merger theory. The court noted various deficiencies in the plaintiff's allegations that a *de facto* merger had occurred. However, it also held that "Mother Nature's apparent dissolution is not a bar to plaintiff maintaining this action against it," and that since the dissolved company remained liable, the case did not implicate the rationale for invoking a *de facto* merger theory. *Id.* at *24-25. In other words, so long as the claim against the dissolved company could meaningfully proceed, the case did not trigger the rationale for applying the *de facto* merger doctrine.

In a similar vein, at least one court has resisted an effort by a corporation to use *de facto* merger arguments to claim rights that the corporation did not have under the corporate structure that it had maintained. In *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 980 F. Supp. 2d 400, 410 (E.D.N.Y. 2013), the district court rejected a parent company's attempt to use *de facto* merger arguments as a way of permitting the parent company to assert contractual rights that belonged to a subsidiary. The court noted that the *de facto* merger doctrine is rooted in equity and has been used as a way of imposing liability on an acquiring company for debts of the acquired enterprise, but that "the Plaintiffs point to no case where the *de facto* merger doctrine was used to confer upon a successor entity contractual rights to sue." *Id*.

Lloyd's has identified two decisions that purportedly relied on *de facto* merger theories to accomplish results similar to those that Lloyd's seeks, but neither decision supports that contention. *See Helvering v. Metro. Edison Co.,* 306 U.S. 522, 529 (1939) and *Storer Broad. Co.*

8

*v. Jack the Bellboy, Inc.*, 107 F. Supp. 988 (E.D. Mich. 1952).  In *Helvering*, two parent companies dissolved subsidiaries but also assumed the obligations of the subsidiaries under certain outstanding bonds.  The parent companies later retired the bonds and claimed tax deductions for unamortized discount and expenses.  Those deductions were challenged on the theory that the parent companies had not really become legally obligated on the bonds and were different taxpayers in the absence of a formal merger of the parents and their subsidiaries.  The Supreme Court agreed that one of the parent companies had acquired its subsidiary's assets in a transaction that was done pursuant to a Pennsylvania statute that had the same effect as a merger.  306 U.S. at 528-29.  The other parent company had not made a transfer pursuant to the Pennsylvania statute, but it had expressly assumed the subsidiary's obligations under the bonds, for which the parent company had already been liable as a guarantor.  *Id.* at 529.  The Supreme Court held that under these circumstances the transfer constituted a *de facto* merger and that the taxpayer was liable for the assumed debts for tax purposes.  *Id*.

In *Helvering* the parent companies did not argue that the holders of the dissolved companies' bonds had been left without legal recourse.  To the contrary: the parents expressly had taken on those obligations, either as a consequence of Pennsylvania statute or by express contractual assumption.  No remedies of innocent third parties were extinguished, and by recognizing the bond liabilities for tax purposes the parent companies accomplished nothing that was inconsistent with the forms of the underlying transactions.

In *Storer Broadcasting*, an individual agreed to buy the stock of a corporation that operated a radio station.  After the contract was signed, and before the sale was completed, the sellers secretly caused the company to transfer the rights to a radio program known as "Jack the Bellboy" to another newly-formed corporation.  107 F. Supp. at 991.  This transfer violated

9

covenants in the parties' contract for the sale of the stock. *Id.* at 991-92. After the closing of the stock sale, the new owner of the radio station dissolved the acquired company and transferred all of its assets to himself. *Id.* at 990. He later discovered the improper sale and sued to recover the rights to the program. *Id.* at 992. The court held that the transfer of the rights to the program had been improper and an unlawful conversion of property belonging to the corporation that owned the radio station, and that the individual owner (as the successor to the corporation) had to right to assert the conversion claim. *Id.* at 994.

In *Storer Broadcasting*, the buyer merely sought to pursue an asset (namely, a litigation claim for conversion) that had been transferred to him. No rights of innocent third parties were cut off, and nothing happened that was inconsistent with the corporation's dissolution.

Companies that expressly assume liabilities are actually liable for those matters and may claim associated tax deductions (as in *Helvering*), and individuals who acquire assets upon the dissolution of a corporation actually own those assets (as in *Storer Broadcasting*), but those conclusions do not support the novel use of the *de facto* merger doctrine that Lloyd's has proposed in this case. Equitable remedies should be invoked only when they serve the equitable purposes for which they were devised. The equitable purpose of the *de facto* merger doctrine is to preserve claims of creditors of dissolved companies who would otherwise unfairly be left without recourse. It would be absurd to allow the same doctrine to be used as a way of cutting off a creditor's rights against the dissolved company (Ridge) in a situation where the claim against the dissolved company is the only available way to satisfy the claim. Such a result would turn the *de facto* merger theory into a tool to achieve the very injustice that the doctrine was designed to prevent.

Second, under the circumstances of this particular case I believe that Ridge (and persons acting in the name of Ridge, including Lloyd's) should be estopped from invoking *de facto* merger theories to try to cut off the rights of the Tort Claimants. There is no indication that during the course of the Kodak bankruptcy case anyone believed that Ridge had merged into Kodak, or that Ridge's liabilities were being compromised and discharged, or that Ridge's creditors should be given notice of the Kodak bankruptcy proceedings and the chance to file claims. There are no references to Ridge in the bar date order, or in the Disclosure Statement, or in Kodak's plan of reorganization, or in this Court's confirmation order. Instead, it appears that nobody raised *de facto* merger arguments until Lloyd's recently did so.

Although the issue is presented to me here as a question of whether Kodak has been discharged, nobody is seeking to impose liability of any kind on the reorganized Kodak. Instead, two things are going on. First, the plaintiffs in the state court contend that Ridge was dissolved but remains capable of being sued in its own name, and that Ridge's insurers remain liable for Ridge's obligations. Second, plaintiffs contend that even if Ridge's liabilities had been discharged, New York state law would still permit plaintiffs to sue for the purpose of collecting from Ridge's insurers. Neither of those arguments affects the reorganized Kodak in any way. The parties agree that the confirmation of Kodak's chapter 11 plan discharged Kodak itself from any arguable liability that Kodak might have had, under any theory, for the liabilities of Ridge.

The motions before me do not seek to protect Kodak, but instead represent an effort by Lloyd's, many years after Kodak's discharge, to sneak Ridge under the discharge shield. Doing so would mean that the Tort Claimants' claims against Ridge itself would have been extinguished secretly, without any notice to them and without Kodak itself thinking that such a result had been accomplished.

11

Bankruptcy (like all court proceedings) is founded on due process. There is no indication that in these cases any party in interest believed that Ridge had merged into Kodak, or that the Kodak bankruptcy would discharge liabilities that Ridge owed to its creditors. Nor is there any indication that creditors of Ridge had any reason to believe that the Kodak bankruptcy cases might affect them. Allowing Ridge (or anyone acting on behalf of Ridge) to argue that Ridge was not merely dissolved in 1971, that Ridge actually became part of Kodak, and that Ridge's own liabilities therefore were secretly and unknowingly discharged when Kodak obtained a discharge – and to make such an argument at a time when it is far too late for Ridge's creditors to participate in the Kodak case, and when nobody made such an argument during the Kodak bankruptcy – would be grossly inequitable. A corporation generally is estopped from denying its own separate corporate existence, *see* N.Y. Jur. *Business Relationships* § 114, and so too Ridge (and insurers seeking to invoke Ridge's rights) ought to be estopped under the circumstances of this case from contending that Ridge did not merely dissolve in 1971 and that Ridge secretly merged with Kodak at that time.

Finally, I note that there appears to be merit to the Tort Claimants' argument that even if Ridge had merged into Kodak, and even if Ridge's liabilities had been discharged, New York state law would still permit plaintiffs to sue for the purpose of collecting from Ridge's insurers. *See* New York Ins. Law § 3420(a)(1); *Rollo v Servico N.Y., Inc.*, 79 A.D.3d 1799, 1800 (N.Y. App. Div. 4th Dep't 2010) (quoting, *Lang v Hanover Ins. Co.*, 3 N.Y.3d 350, 355 (2004) for the established principle that a bankruptcy discharge "does not bar a plaintiff in a personal injury action from obtaining a judgment against the bankrupt defendant[s] for the limited purpose of pursuing payment from defendant[s'] insurance carrier") (other citations omitted). To the extent that the Tort Claimants might have needed any confirmation from this Court that they could sue

Ridge as a nominal defendant for the sole purpose of collecting from Ridge's insurers, I hereby confirm that they may do so, and the parties should include such a ruling in the proposed Order that they submit.

## Conclusion

For the foregoing reasons, the motion to reopen the chapter 11 case is granted but the separate motion to enjoin the continuation of the Tort Claimants' state court lawsuits (on the theory that they purportedly violate the discharge of Kodak) is denied. The parties are directed to settle an Order upon notice that reflects the foregoing rulings and that re-closes the case.

Dated: New York, New York
      December 4, 2020

                                      /s/ **Michael E. Wiles**
                                      UNITED STATES BANKRUPTCY JUDGE